We'll hear argument next in Case 14-520, Hawkins v. Community Bank of Raymore. Mr. Duggan. Mr. Chief Justice, and may it please the Court, persons who jointly and severally agree to repay the applied for debt are applicants under ACOA, and that is precisely what occurred here. My clients were required, in violation of Regulation B in ACOA, as spousal guarantors to become jointly and severally liable to repay the debts of their husband's business, which clearly qualifies them as applicants both under the straightforward language of ACOA as well as the Regulation B that was adopted by the regulators. In this particular instance, as in many credit transactions, the real applicants in this transaction are not a to-be-formed limited liability company or corporation, but the persons that will stand as guarantors behind that company. Didn't the Federal Reserve Board originally, I think in 1977, take the opposite position and said explicitly that applicant excludes guarantors? Your Honor, with regard to that position that was taken by the FDIC in 1977, they were responding to claims by the industry that they did not want applicants broadly defined to include guarantors for notice provisions, and in response to that, the regulation was crafted in a way that did, in fact, address that concern, but it was never intended to eliminate the potential claims for spousal guarantors when the case law came down and said, we are relying on the Regulation B of 1977. According to what the regulators adopted then in 1985, they said we were mistaken, we've been misinterpreted about what our intent was. We now need to modify the regulation to make it clear that those persons who were discriminated against based on marital status have the right to bring the claim. Do you have to give notice to guarantors now? No, you do not, Your Honor. Well, how can that be? I mean, they're either applicants or they're not applicants. Well, I think you have to give them notice. Saying they're applicants for one purpose, they're not applicants for another? Yeah. And the agency can make that up? Well, I think the Court has already ruled in the Duke Energy case that regulators in appropriate circumstances can even take a defined term under the statute, in that case the term modification, and cause it to mean different things in different subsections. I never liked that case. My apologies. What happened in this case, Your Honor, was very, very reasonable by the regulators. They came out in 1985. Just out of curiosity, why — well, everybody agrees that PHC development is an applicant, right? Agreed. Why didn't PHC development sue and claim that requiring the guarantees was in violation of the law? At that point in time, the case law that had developed so far and the Regulation B made it clear that the spouses had standing to bring the claim, and the spouses were the ones that asserted the claim. But why does it matter if there's always somebody to bring a claim? In what set of cases does the answer to this question matter? I think it's important for several reasons. First of all, spouses who are required to sign jointly and severally with their husbands' businesses and their husbands are going to undertake potential adverse credit consequences in the future. Let me give you an example. Divorce or death of the primary operator of the business. If the wife has become jointly and severally liable to repay the husband's debt, she then is going to be strapped with his credit profile in a business that she never had any operational authority, that she never was involved in, and she wasn't an investor on. She was simply required to sign because she was the spouse of the husband. And what's important to understand in these cases is that when you say she was required to sign, she wasn't required to sign. Somebody put a gun to her head? She wanted the husband to get the loan, and this was the deal. And I think that's exactly what the regulators began to do. Well, but don't talk about it as she was required to sign. She was not required to sign. There was a requirement placed upon. If he was to get the loan, he had to get her to sign. But she was not required to sign. Agreed. She signed the guarantee by virtue of a condition being placed upon the extension of credit to her husband and the borrowing entity. And what's important to understand is that in these cases, these borrowing entities, and in this very case, which typifies these small business organizations, that, in fact, it's never really the to-be-formed limited liability company that's the borrower. It's always the guarantors. We need to look no farther than DOC 79-7, page 1 to 3, which is the bank's actual approval of this credit application. In that document, which was a part of the trial court record, the bank, in responding to its own internal write-up on the operating history and the potential for the entity to pay back the debt, it said, non-applicable. Financial projections of the borrowing entity, non-applicable. The precise reason to approve the loan, quote, I recommend approval of this loan request based on the financial strength of the guarantors and our collateral position. The only collateral that was ever taken in that transaction was the collateral of the guarantors. To suggest that guarantors are not the real applicants in these loan transactions is to be divorced from reality. They are the true applicants. Scalia. Let's assume that I write a letter of recommendation for some young woman who is applying to a law school or to a college. I would really like her to be admitted, and I've written a letter of recommendation to sort of put my judgment, my reputation on the line on her behalf. Am I an applicant to the law school? No. Would anybody use the English language that way? Well, I believe in that context that person is not agreeing to become jointly and severally liable to pay the tuition. What difference does it make? Instead of putting my financial solvency on the line, I put my reputation on the line. Well, I think it's very important because the regulators made a reasonable interpretation under their broad grant of authority that when they're required, when a condition is placed upon the approval, that they have to come forward and be contractually obligated to repay the applied for debt, they are an applicant. They are not applying. It's their husband who's applying. And they don't have to or it's a company that's applying. They don't have to go in. It's up to them. The guarantees in this case have specific requirements for independent performance by the guarantors, such as providing financial statements, repaying the debt, paying their debts on time, honoring all their obligations with the lender. If they breach one single obligation that's independent to their guarantee, they're obligated to repay the debt in full. And when I have a child and I apply for that child to be admitted to the XYZ public school for which I will pay, private school for which I will pay the tuition, am I an applicant? I don't think so. You don't think so? I think in part, maybe, but my contention is you're not. This is a favorable question. I thought it's obvious that when a parent applies. You should announce that. I have a parent in your eyes and I share that concern. What? Wait. A parent applies for a child, her child, to be admitted to a school for which she will pay. The child is 7 years old and has a hard time writing the application. Isn't it normal for us to refer to the parent as the applicant, even though the child doesn't?  Yes. And it is not normal for us to refer to the applicant for college as the parent, even though, unfortunately, the parent foots the bill. Was this corporation a minor? What? The corporation that applied. Was it a minor? No, but change the 7-year-old to a young man who's applying to law school who is already shaving for Pete's sake. But my point is just to fire the applicant. I think our point for both of us is that how we use the word applicant depends upon the context. Very true. And, therefore, what is it about the context of the guarantor of a loan that makes it reasonable in that context to call that person an applicant? Let me answer that question directly. Well, I don't agree with the hypothesis. Why do you accept the hypothesis? What it means depends upon the context? It means what it means. Now, whether the person is an applicant within the understood meaning of applicant, that depends upon the context. But the meaning of the word doesn't change. May I address the questions, Mr. Chief Justice? It's all right with me. Thank you so much. The definition of the word apply is to appeal to a request. And in this particular case, I believe that anybody who signs a written contract that says I have independent obligations to perform under my guarantee that make me jointly and severally liable to repay the debt in full, and if I fail to perform, I agree to repay the applied for debt in totality. I don't know how in the world that person is not somebody who is appealing to and requesting that credit be extended by putting their own financial wherewithal and capacity to repay the loan on the line based on their own independent requirements. Under your view, let me understand the theory of the case. Let's say that you prevail, that a guarantor is an applicant, and that there is a violation of the duty to the guarantor, and that there are five guarantors. Can each of the five guarantors bring a separate suit for punitive damages? And also, this is also part of my question, can the loan be declared unenforceable? No, the loan cannot be declared unenforceable under the laws that exist today. The only thing that could be declared unenforceable would be the spousal guarantees which are deemed illegal under Regulation B. Not all of the guarantors can bring a claim. The husbands can only bring a claim to the extent they suffer damage as a result of their wives being required to be guarantors on the case. Mr. Chief Justice, I see that my time is limited. I may like to reserve the remainder for rebuttal if there are no further questions. Thank you, counsel. Thank you so much. Mr. Fletcher. Thank you, Mr. Chief Justice, and may it please the Court. For 30 years, Regulation B has provided that guarantors, cosigners, and other similar parties to credit transactions qualify as applicants or are entitled to protection from discrimination under the Equal Credit Opportunity Act and the Additional Parties Rule. That longstanding regulation is reasonable, and it reflects a reasonable interpretation of the Act's broad definition of the term applicant. Mr. Fletcher. Roberts, is the person an applicant in the abstract? But the important thing about context here, there are two terms, applicant and guarantor, and that's the way it's always worked in the industry. Somebody in the industry would not call a guarantor an applicant. The person is a guarantor. So I just wonder how we can pluck applicant out. Obviously, in some sense, anybody who is supporting the loan, you know, you can describe the person as a guarantor. They're applying for it. But there's a separate term, guarantor. And if you ask somebody, well, what is this person? Is this person an applicant? They would say no, it's a guarantor. Well, Mr. Chief Justice, the term guarantor doesn't appear in the statute. And I don't think it's true that the term applicant and guarantor have fixed meanings in the industry and that you could never construe a guarantor to be an applicant. I think, in fact, often, as we explained in our brief, guarantors and cosigners might fill out the same application and join together in the same application that they submit to the borrower in seeking the loan. And so I don't think there's an industry understanding that you can't reasonably regard a guarantor or a cosigner or another secondary obligor who is playing that sort of role. Roberts, do you think there's an industry understanding that there are guarantors and there are applicants? I mean, if you were in the industry and you're looking at this, you wouldn't call the Petitioner an applicant. You'd call her a guarantor. I think you, in some, certainly in some contexts, you might use the two terms differently. Sotomayor, wouldn't you use the word borrower instead of applicant? I think, certainly, after the loan had been extended, you would use the term borrower. But I think if you look at the context in which Congress used the term, it wrote a very broad statute. It said it shall be unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction. And then it defined an applicant to be any person who applies to a creditor directly for an extension, renewal, or continuation of credit. Alito, why would you disagree that in ordinary speech an applicant is understood, as Judge Colleton said, to be someone who is asking for something for himself or herself? And if you don't agree with that, could you give me your best example of a situation in ordinary speech in which the term applicant is used to refer to someone who is not asking for something personally? Justice Alito, I agree that very often applicant refers to the person who is going to receive the thing that's being sought. I don't think, though, and this is what the other side has to convince you of, that it unambiguously excludes any other meaning. And in terms of my best examples in terms of ordinary speech, I think the one that Justice Breyer gave earlier was a good one. Alito, let me come back to that. Suppose that this child is rejected for kindergarten, and then the parent is glum the next day at work, and someone says, why are you down today? Would the parent say, well, I'm down today because I was just rejected for this fancy kindergarten? I think you wouldn't say I was rejected, but you might say I'm down because I'm. My application was rejected. I think you very well might. I think if you filled out the application and you made the request and you were upset that it was denied, I think it would be perfectly sensible to say my application was denied. Mr. Fletcher, in some ways the agency itself has admitted that this is not the most natural reading of the term. When the agency explained why it was articulating this rule, it said, well, the problem is that section 706 of the Act confers standing to sue only upon an aggrieved applicant, and so we have to come in and kind of fix that. And so, too, the regulation itself talks about applicants and additional parties as though the two are different. And then the regulation, as I think Justice Scalia said, says, well, this is our definition of applicant, but it's really only for this purpose, not throughout the statute. And all of those, it seems to me, are quasi-admissions, that this is not the most natural way to read the word applicant. Mr. Fletcher. Justice Kagan, I'm glad you brought that up, because I very much disagree that that's how the agency has viewed this. And I think in particular you referred to the way that the agency described the change it was making in 1985 when it amended the regulation to expressly include guarantors for certain purposes. And you're right. They said we're doing this because courts have ruled guarantors out of court. But the reason that it said that was not that it believed that guarantors were unambiguously excluded by the statute or that it was rewriting the statute. It did that because between 1977 and 1985, the agency's own regulation had expressly said that applicants do not include guarantors, cosigners, and other similar parties. And so the courts that had said that guarantors didn't get to bring a suit were pointing to the agency's regulation and says this statute only protects applicants, and the agency is telling us expressly that you as a guarantor aren't an applicant. And so the agency came in in 1985 and it said our own regulation, our previous version of our regulation which excluded guarantors, is creating this problem, and we want to fix it by defining them to be applicants. Scalia, you don't solve a problem by fixing a definition. I mean, why was it a problem? It was not a problem if applicant meant what the prior regulation said it meant. Why was that a problem? Well, I think it was a problem because it left guarantors who had been improperly required to sign loan documents without remedy. Yes, but that's what the law read. I mean, if it was a problem, it was a problem with the law. Well, that was a problem with the agency's own prior regulation, which expressly excluded guarantors. When the agency – and let me step back. Sotomayor, can I just start? Why did you have to pass the first regulation at all? What caused you, if it was as clear as Justice Scalia believes, why did you need the regulation at all saying it doesn't include? So if I could just give you a little bit of the history of how the regulation developed. The Equal Credit Opportunity Act was passed in 1974. When the agency, the Federal Reserve Board, first passed regulations in 1975, it just incorporated the statutory definition of applicant and relevant part. It didn't speak to the guarantor question one way or another. But in 1976, just a year later, it added a substantive provision that made clear that at that time, in 1976, it regarded guarantors as applicants. It said that for purposes of a provision of the regulation, and this is something we cite at page 7 of our brief, for purposes of a provision of the regulation that required creditors to give notice of their credit decisions to applicants, if you have multiple applicants, creditor, you can just give notice to one of them. But then the regulation provided you may not give that notice to an applicant who is a secondary obligor, such as a surety or a guarantor. So the agency's first interpretation was actually that the plain language of the statute which had been incorporated into the regulation included guarantors. Alito, I think it's particularly important where the borrower and the guarantor have adverse interests. And if that's correct, how often does that arise? So, Justice Alito, I think it's particularly important where the borrower and the guarantor have adverse interests. For instance, if there's been a divorce and so the spouse's interests are no longer aligned, then I think it's very, very important. But I don't think it matters only in those cases. And this goes, too, to the question that Justice Kagan raised earlier, which is why does this matter? And the reason that it matters is that a guarantor who is improperly required to provide a guarantee suffers a unique economic injury that is not suffered by the applicant. So in a common case, the lender says, I won't extend this loan without a signature from your spouse, and everyone agrees that that's a violation of Regulation B, and everyone agrees that that's not permitted. And if in that case the spouse provides the signature, as often happens, then the primary applicant, the borrower, hasn't suffered any harm at all. They've gotten the loan that they wanted. So they have suffered discrimination in some sense and they would have a claim in some sense, but in many cases they're not going to have economic damages to assert in court. The guarantor, on the other hand, oftentimes will have that obligation on her credit report immediately. It could adversely affect her credit scores immediately. As we explained in our brief, if there is a default on the underlying loan, then that's going to be a black mark that's going to tarnish the guarantor or the co-signer's credit going forward, even if she ultimately pays the debt. Kagan Well, one of the things that Judge Posner said against your interpretation is that this actually creates liability on a scale that Congress wouldn't have expected, because if you are right, the guarantor can come in and declare the entire loan invalid and the damages would be much higher than it is for the borrower himself. I mean, what's the answer to that? Is there an answer? It's just like, well, that's what it is. Goldstein, I think the first answer is that the availability of that remedy of allowing a guarantor to assert and actually invalidate the guarantee that's been illegally required, that won't be resolved one way or the other by the way you answer this question today, which is just are guarantors reasonably regarded as applicants since they've been defined for 30 years. But I understand, though, why you would be interested, because it is a related question of what remedies might guarantors have available. And we think the answer to Judge Posner's question in that case is that there's nothing at all unreasonable about requiring a lender that has improperly demanded a guarantee to not be able to enjoy the benefit of that guarantee. As we explained at the end of our brief, that's been the enforcing agency's longstanding policy. When the FDIC or the Federal Reserve Board or other agencies conduct examinations of the books of banks and when they find violations of the additional parties rule like this, the remedy that they apply is to require the bank to release the improper guarantee. Or in cases, and I think this is another important point, Regulation B doesn't prohibit spousal signatures under all circumstances, to the extent that what the bank wants to do is ensure that in the event of a default it's going to be able to reach specific property that the primary applicant is relying on. It can require a signature from the spouse, not for personal liability, but just to allow it to reach the property that is being relied upon to support the loan. And so I was just going to say, so in that case, I think the proper remedy wouldn't be to void the loan altogether. It would be to give the lender what it had the right to demand, which was a more limited instrument. I'm sorry, Justice Breyer. Breyer, can you explain quickly? I'm now uncertain. I've accepted the point that I could be a rejected application for kindergarten on behalf of my ex-husband. I've got that. But what is this actually about? The law says you cannot discriminate against a borrower, for example, for example, by saying that you, the borrower, has to have to have a guarantor from someone you're married to. Right. That's what the law says. It says you can't discriminate against any applicant with respect to any aspect of a credit transaction, yes. And this has been interpreted to include you cannot say to a married person you have to have the marriage of the spouse's son. That's correct. All right. So that's where we start. Now, if the applicant were just the applicant for the credit himself, what would be wrong with that? Then you'd say, well, the person who's hurt here among the people, just as if, for example, when you run a train into a wall, there are a lot of people hurt. So if the person, namely the spouse, really is hurt, why does she have to be an applicant? Why can't you just sue for harm as a result, caused as a result of the forbidden discrimination? So the statutory cause of action gives any applicant a right to sue. I know, but why wouldn't you sue if you're directly injured as a result of an unlawful act, which is what the regulation. So, and I think Petitioner has suggested that there might be State law causes of action, but I think in terms of having the right to sue. Not State law, just right under this statute. You say, I have suffered harm. I was about to take this ticket, and everyone admits I would have taken the money, invested it in the lottery, and would today be a millionaire. Hard to prove, but nonetheless, if proved, maybe she was hurt, so why can't she sue? Because the statute gives the right to sue to applicants. But it doesn't say, okay, so you're repeating yourself. To an aggrieved, to an aggrieved applicant. Not too far, and so your whole idea here is say she's an applicant, too. Right. And then she can sue. She's an applicant. Now it seems to me maybe you're pushing the edge of the word applicant as they did intend it in the statute. That's the – that is a problem. On that point, are there places in the statute, in this statute, where guarantor and applicant is a distinction that has to be made? In other words, under your view, does applicant include guarantor in every part of the statute? So in our view, there's no place where reading applicant to include guarantor wouldn't work or would create a problem. What the agency has done when it amended its regulation to include guarantors is it asked for comments on whether there are specific provisions of the regulation that guarantors should be exempted from, and in response to those comments, it decided to exercise its broad rulemaking authority to exempt them and to not treat them as applicants for purposes of other provisions of the statute. So I don't think that's the case. Scalia. Where does it get that discretion? I mean, it says applicant in the statute. When it says applicant, the agency has discretion to say, oh, yeah, it says applicant, but sometimes we're going to ignore that. Yes, Justice Scalia. It's under the grant of a rulemaking authority, which is in section 1691B, subsection A. Which says what? Which says that the Bureau shall prescribe regulations to carry out the purposes of this subchapter, and the regulations may contain but are not limited to such classifications, differentiation, or other provision, and may provide for such adjustments and exceptions for any class of transaction. Breyer. Have you got an example, any example at all, from a magazine having to do with finance, from anything you can find, where, in fact, in the context of financial transactions, there are references to a surety, a guarantor, or a mortgage insurance, there's a reference to such a person with the word applicant? So here's my best example, Justice Breyer. They're on page 24 of their brief, of my brief, and they don't use the word applicant, but they talk about who's regarded as receiving an extension of credit. And this is our secondary argument, Justice Alito. Even if you think that an applicant is only someone who seeks something for themselves, we think a guarantor is reasonably regarded as seeking an extension of credit for themselves. As we explain on page 24 of our brief, for purposes of the Fair Credit Reporting Act, lenders and other banks rely every day on reading the Fair Credit Reporting Act to mean that the same definition of credit, which refers to the extension of credit, includes a guarantee. The authority in the Fair Credit Reporting Act that allows a lender who has a prospective guarantor before him to look at that guarantor's credit report is a provision of the Fair Credit Reporting Act that says you can pull the credit report of someone who's going to receive an extension of credit in connection with a transaction. And we cite there a 2001 letter from all of the banking regulators that explains in detail why it is reasonable to regard guarantors and other secondary obligors as receiving an extension of credit and why, in fact, that's essential to the effective administration of the Fair Credit Reporting Act. Thank you, Your Honor. Roberts. Thank you, counsel. Mr. McAllister. Mr. Chief Justice, and may it please the Court, this is a Chevron step one case. The FRB gets to be the sorcerer's apprentice, but not the sorcerer. It's trying to rewrite the statute here, not define ambiguous terms. The government takes the view that the statute has to unambiguously exclude guarantors. That's the wrong starting point. The question is simply, is the statute ambiguous with respect to whom it covers? Under the government's view, every statutory definition would have to have two parts, the part that defines who is an applicant and part two that says who's not an applicant. Mr. McAllister, I take it if there were two borrowers, you would include both of them, both would have a cause of action? Absolutely. If they're joint applicants, the statute covers them. How about if they're cosigners? I take it that something as a cosigner is somebody who's jointly and severally liable, but is not himself receiving the money. Is not an applicant. Exactly. So you would count that out. Count that out. They are not an applicant. So the statute refers to applicants, and certainly the regs and the statute contemplate the joint applicants who go in together, they want the credit together, and they have an obligation to make the repayments, either or both. But a cosigner is different. And this is so even if the cosigner had to file the exact same kind of papers and do everything else that the borrower himself had to do? Exactly. And part of that is because of the statute's definition of credit, which no one has talked about, but the statute's definition of credit, that is defined explicitly, just like applicant. And it's part of the applicant definition. And credit means a right to defer payment of debt. A cosigner and a guarantor never have a right to defer payment of debt. If they become responsible, they are responsible then. So what that is contemplating, in our view, is the borrower, is the person who's making the regular payments. That's what's encompassed in the statutory definition. I would refer the Court also to comparable civil rights statutes of this era. In particular, the Truth in Lending Act, the Fair Housing Act, age discrimination and Employment Act, all of them use the word person to describe who can bring a claim. In the ECOA, Congress very deliberately chose something narrower, and not only did it choose it, but it expressly defined it in the statute. And we describe this as a gateway provision. We don't argue that the Fed doesn't have broad authority in many respects in implementing the ECOA, but what it does not have the authority to do is to rewrite the statutory definition that Congress very deliberately and precisely put in the statute. Suppose that I have a credit card, and now I get married, and I'd like a secondary credit card for my spouse, and I apply to the credit card company for a secondary credit card, who's the applicant there? Well, I think you are still the applicant there. So even though I receive no direct benefit, the credit is actually given to my spouse now? Well, if they have the ability to charge on the account same as you, then I guess they would effectively become a joint applicant at that point in time. They would effectively become a joint applicant, even though I'm the only one who's filling out all the papers. But the statute contemplates that there can be situations in which a third party requests credit on behalf of another. And that's another reason why we think guarantors are not included, because it is contemplating, for example, the parent who goes in, says I want to arrange a loan for my son or daughter to buy their first car. The son or daughter is actually ultimately going to be the applicant. The parent may well be a cosigner. The parent may initiate the transaction. But the recipient of the credit, the right to defer payment of the debt, is an applicant. I guess, you know, and this is a functional point for sure, but it doesn't seem to make a whole lot of sense that suppose a lender doesn't want to provide credit to a married woman because has all these sex, gender stereotypes in the lender's head, and the lender couldn't require that the husband be listed as a joint applicant, but could require that the husband be listed as a cosigner, even though the effect of those two things are exactly the same, which is that it's a requirement that the spouse essentially become joint and severally liable for the loan. Well, I don't think there is a difference. I think the cosigner is in the same category as the guarantor. But here's my fundamental answer to your question, Justice Kagan. Is the purpose of this statute is abundantly evident. The language we think, but if you look at the legislative history, the point was to get credit in the hands of people who were being denied, in particular women. That is the applicant. So the way the statute is intended to work, and works just fine with the definition of applicant we use, is to say when that person shows up and the bank says, no credit for you unless a spouse signs, the violation has occurred then. And the discrimination is against the person who wanted to borrow the money. The government may wish that the discriminatory provisions were broader than that, but that's the way the statute works. So the applicant has a claim, the borrower who is told you need more signatures. Otherwise, you could imagine scenarios, I think one of the amicus brief spends out one, where say the person comes in and the bank says, I need, because you're of a certain religion or a certain race, I need 15 guarantors for your, well, all 15 guarantors can simply say no. But under their view, all 15 guarantors actually have a claim under the ECOA, and that just makes no sense. That's far beyond what Congress. Sotomayor That's not quite accurate, because the only person who's given a right not to be discriminated against is the applicant, an applicant on the basis of marital status. No, Your Honor, no, that's not true. I mean, the statute covers marital status, sex, religion, race, age even. So there are a number of prohibited bases. The original statute was sex and marital status, but then in 1976 it was expanded to cover other. Breyer, why does it matter? A person sitting at the table says, please lend me $10,000. Now, the lender says, I want you to have someone from a forbidden category as a guarantor. He's outside, he walks in, and he says, I'll guarantee this loan. I want you to lend him $10,000 and I'll guarantee it. Well, why hasn't that guarantor applied for a loan to another person? It is a, it has to be a guarantor. Breyer, what is it, because who are the ones you said do fall within applicants? It's not just the person sitting at the table, then others come up, and they have to get, there's like sureties, there are like guarantors, there are a bunch of different things. It seemed to me some of them you thought might. None of them actually should be included. If I suggested that ours is a straightforward definition adhering to the statute, you can certainly have joint applicants, joint borrowers, but that means they are receiving the benefit of the credit directly, the credit is flowing to them. Why? I mean, the thing I don't get is why can't you apply? An applicant means a person who applies for something. So why can't you apply for the thing, being, give some money to this other person? Because, again, I come back to the statutory definition, Justice Breyer, which says you are applying for credit, and the statute defines credit. So it says credit is the right to defer payment of a debt. And the person who has asked for the debt. Breyer, and you say I am applying for just that, and I am applying for just that. My application, here it is in writing, is that I want you to do just that for Smith, who is sitting at the table. And in our view, the statute means Smith is the applicant. Because? Because, again, the person who filled the debt. I don't want you to repeat yourself. You don't have to. But I mean, you see where I'm having the problem? Jones, who came in, he fills out the papers, and he signs the signature, he puts in all the things, and he says, please, please, please give that credit to Smith. Now, why hasn't he? He's applied. He's applied for the credit to go to Smith. I mean, in English, hasn't he? Why not? Well, I think that's in a sense contrary, really, to the most ordinary understandings of the word applicant. Of course, we've got a statutory definition. If I go back to the university admissions process. Sotomayor, I'm sorry, the definition, the common definition, the Chief has defined it that way. But the only dictionary that uses it in the way you want is Webster's Third. Every other dictionary, and Webster's Third has been criticized by at least one of my colleagues, if not more. All right? I'm aware of that. Terrible dictionary. I'm aware of that. All the others don't use a direct benefit language. They all say you're just asking for an extension of credit. And they don't suggest it has to be for yourself. It could be you're asking for an extension of credit for anyone. So, I mean, I'm quarreling with your reliance on some common understanding of a word. You've got co-signers. You've got parents who sign, as co-signers, rental agreements for their kids. They're not getting the benefit of the apartment. Nobody believes that they are using the apartment. They're doing it to bolster up the credit of their child. So I don't know why applicants can't mean in common parlance that you're asking for credit to be extended to anyone, whether it's you or another person. Perhaps that's the key, Justice Sotomayor, is that you're talking common parlance. In my view, common parlance is the definition that we assert and that the statute asserts. Judge Kala place. Ginsburg. And why did the Federal Reserve Board initially specifically exclude guarantors? It was so clear that applicant excludes guarantors. Why did the Federal Reserve Board do something so unnecessary to specifically exclude them? Because I think they created confusion, Justice Ginsburg. So I agree with my colleague, Mr. Fletcher, that there was a reg for a short period of time that suggested in one particular setting, multiple applicants, who do you give notice to? The Fed put in some language that said, well, don't give notice to applicants such as secondary obligors, such as guarantors. The Fed then a couple of minutes later proposed maybe we should just make this a general rule that guarantors are included. They took a notice and comment, and a few months later they said, we've really sort of stirred up the pot here. Let's just make clear that guarantors and secondary obligors are not included. And that's why we got the 1976 version. Mr. McAllister, in Corbin on contracts, when they talk about guarantees, they say that in most cases of guarantee contracts, the offer comes from the guarantor requesting the giving of credit to a principal debtor. So Corbin on contracts clearly thinks that the guarantor is a requester, is an applicant for credit, and just to a third party, to the principal debtor. But why — I mean, that's a pretty, you know, credit-specific definition of what it means to apply for credit, and including, pretty clearly, guarantors. Well, that's — that is what Corbin says, but again, I would come back to guarantors do not sign the same document as the borrower. They are not liable in the same way. They have a separate contract with the lender, which the borrower is not even party to the guarantor's contract. And you think that it's really contingent on that, on exactly which contract you signed? I mean, these folks give you a lot of information, they sign their names to a lot of information, and, I mean, unlike the usual guarantor case where the guarantor is only liable if there's a default, here the guarantor is jointly and severally liable, much like a cosigner is. Or at any rate, cosigners are jointly and severally liable. And you want to put them in the same box, too. So it doesn't really matter where the lender is. Right. But that is a mischaracterization. These are guarantees that are not jointly and severally liable. I don't know that we could find 50 like that. This is the collegiate dictionary. Maybe that makes it too simple-minded. But the — it says an applicant, this is very helpful, an applicant is a person who applies for something, all right? We're not making too much progress. But then when we go to apply, the second definition down here is to make an appeal or request. Does the guarantor make an appeal or request? Yes. Especially in the form of written application, he even writes it, e.g., for a job. No? It doesn't apply for a job. It doesn't have to be a job. You see, it's a general kind of thing. And we're at step one of Chevron, and we're only talking about whether landowners will bear the meaning. Scalia. Scalia, I assume that that definition would cover my letter to somebody urging that person to hire somebody else. I think that's exactly right. I would be an applicant under that definition, which is, of course, absurd. And two things about that absurdity, Justice Scalia. One absurdity is that he's not asking for money. Pardon? He's recommending someone, but this is about an extension of credit. Right. But still, you'd be asking for the same result that the applicant is seeking. So I mean, I take the question in that fashion. But two things about that. Well, it would be a different thing if the statute said don't discriminate on the basis of someone being a justice. It should say that. The analogy would work only if you did that, right? But what I was going to say is the government concedes that the statute uses one of the words, in fact, they didn't say this, but I believe the statute uses the word applicant something like 50 times. And only for one purpose do they say this definition should apply. That runs counter to presumptions. This Court has long stated that statute is used repeatedly. I thought that the government answered that question differently. I thought their position was that if they prevail, their definition of the word applicant to include, guarantee, or apply, A, applies across the board 50 times, and B, makes the Act perfectly workable. Neither one is — I don't think either one is true, Justice Kennedy. Maybe I misunderstood their answer. Oh, I don't think they say that it would apply across all 50 uses. They said we could change it. Actually, they are suggesting they could have 49 other definitions of applicant every time it's used somewhere else in the statute. They could define it differently for that purpose. Can you give me an example of where it would be really contrary to a sensible interpretation of the Act to use the term applicant as synonymous? Other than for what we're talking about here. Well, for example, giving notice of adverse action. I mean, the agency itself has said a guarantor cannot be subject to adverse action, and yet you would have it. I frankly don't believe why that makes the statute unworkable. If I'm a guarantor of someone's death, I want to know when they're in default. Because I'm going to call them up and start — if it's my child, I'm going to start browbeating them. Meaning, I don't know what the rationale for that was, whether I agree with it or not. But why does it make it unworkable? Well, it would — it's not just that, Justice Sotomayor. It's not just at some point down the road. Usually this is focused on the application itself. So again, if you had the case of multiple guarantors, the bank turns down the borrower. Then they're under obligation, if you take that view of the statute, to notify everyone who had any connection to the transaction. But the agency has long said that is not required. The agency's commentary — if you look at Supplement 1, the interpretations of the regs and other commentary by the agencies, except for this purpose, the agency always talks about guarantors as different than joint applicants, co-borrowers. No one in the industry would think of these two things as the same. To come back to the Chief — Mr. Chief Justice's point, a bank would not say a borrower is equivalent to a guarantor, not even close. They're two very different things. No, they certainly wouldn't say a borrower is equivalent to a guarantor. But the question is whether an applicant is equivalent to a guarantor. They would say the person who wants the credit, the applicant, is not the same as a guarantor. So why — The entire idea of a guarantee contract, right, why is a guarantee agreement even enforceable, is that there is consideration, and the consideration has to do with the fact that credit is going to a third party, right? And so the guarantor is stepping in and saying, I'm asking for something and I'm getting something when I enter into this contract, and that's the credit will go not to me, but to a third party. So the question, I think, is, like, why should that be — you know, just because it's to a third party, the appeal, the request, the application is asked to a third party rather than to yourself, why that should make any difference if the question is just what does applicant mean? Applicant doesn't have to be for yourself. Well, I agree that's the consideration for the guarantee. But what that opens the door to, Your Honor, is there have been 60 or 70 reported ECOA decisions since the change in 1985. More than half of those are within the last five years. After the 2008 crash, massive defaults, this is coming up more and more for banks as a defense. And if I can have just one minute, I'll tell you where this leads for banks. So if the rule is a spousal guarantee can be voided, and that's what the relief sought, they're not asking for damages. They want to invalidate, void the entire guarantee. That was Judge Posner's point. So if that is the rule, what is a bank to do when a married person comes in and seeks credit? Well, one thing the bank may do is say, only secured credit, because I cannot rely on any guarantee. I can't even rely on a spousal guarantee if the spouse says, I want to give the guarantee. Because when this goes in a bad direction and it's time to collect, then years later, that spouse may do what these spouses have done and say, I was required to do this. This was a violation of the statute. And at a minimum, the lender is then engaged, as this lender has been, in extensive litigation costs just to even try to resolve the situation. All of that leads to lenders are going to be less likely to want to lend to married couples, except if they are secure in their loans, and that may mean you have to put up assets, a guarantee no longer suffices, and it may mean you have to get more guarantors because they can't rely on the spouse. None of that furthers the purpose of the ECOA, which was to get the credit in the hands of people who were at that time being discriminated against. So the fundamental problem with Reg B is it opens the door. And now that the lawyers have discovered this provision and are bringing it up regularly, it will have a dramatic impact on the credit industry. Scalia. On the question of the guarantor entering a contract just as the borrower enters a contract, the two contracts are quite different. The borrower enters a bilateral contract. I promise to pay back the money if you – with interest if you promise to lend me the money. The guarantor is asking for a unilateral contract. The guarantor is just saying I make no promises, but if you lend money to this person that I'm guaranteeing and that person defaults, I'll make good. That's a unilateral contract, which doesn't bind the lender at all. It's if the lender chooses to do that, I'll stand good for the default. The two contracts are quite different, and in that respect, you can't call both of them applicants just because they both have contracts. Of course they both have contracts. I agree with that, Justice Scalia. And unless the Court has further questions, I would ask that you affirm the decision of the Eighth Circuit. Roberts. Thank you, counsel. Mr. Duggan, you have four minutes. Thank you, Mr. Chief Justice, and may it please the Court. I think the primary answer to talk about to start with is these guarantees are not simply guarantees of the performance of the borrower. They are separate, independent performance required by the guarantor under the guarantee. The guarantor must pay its creditors on time. The guarantor must provide financial statements to the lender. The guarantor must fulfill all other obligations and any other agreement that the guarantor has with the lender. If the guarantor fails to perform any one of those single independent requirements of performance under the guarantee, the guarantor agrees to repay the debt in full. There is separate performance under the guarantee. Why would a bank ever decide to give a loan with a spousal guarantee? I'm not sure I would. Why would a bank ever do that? There's several circumstances. Number one, husbands and wives can come under the regulation safe harbors as joint applicants contemporaneously and say, we want joint credit. It's only a violation of the Act if the lender, once an independent spouse comes forward and says, I want credit, says as a condition to me extending you the credit you want, you must bring your spouse along. The second thing is, I think this regulation has got to be the easiest regulation to comply with. A, B, C, 1, 2, 3. There's safe harbors under the regulation. If a lender is relying upon jointly owned assets of a husband and wife, the regulation and the statute, 1691B, create a specific safe harbor that says, get a security interest in the asset, don't get a guarantee, or simply ask the spouse to waive her marital interest in the jointly owned property so that if, in fact, you have to execute on that jointly owned property to collect the debt, you're permitted to do that. Two very simple safe harbors to comply with. What they don't want you to do is to strap the spouse with the potential adverse credit in the future where she has to use her income or her earnings or her ability to get future to pay off either a divorced or deceased spouse. One of the rationales. Makes a ton of sense. Back to the other points that were made. The application here, the dictionary definitions run the gamut, but they all have two specific statements. Appeal or request. And the statute here says they repeal and applies for an extension renewal of credit. Doesn't say of credit to the borrower. Doesn't say of a loan to the borrower. It says of credit generically. And back to Justice Breyer's comments. In fact, why in the world that somebody who becomes contractually, jointly and severally liable to repay the debt in full and says, I have my independent obligations under my guarantee, and if I don't perform, you can collect the entire debt for me. How is that person in that context not saying to the lender, I am appealing to you and requesting an extension of credit. I'll go so far as to say I'll stand behind the loan and I have my independent obligations to perform under the guarantee. And if I don't perform, I'll pay. That to me can be nothing but an applicant. Thank you so much for your time. I'm happy to answer any questions if there are any. Thank you, counsel. The case is submitted.